NORTH & SCOTT, Respondents, *vs.* NELSON & McCLURE,
Appellants.

1. Under the practice act of 1849, where a defendant, upon whom there has
   been fifteen days' service of process, files an answer admitting the cause of
   action, or containing no defence, the plaintiff is entitled to judgment at the
   return term as for want of an answer.   (Judge SCOTT dissenting.)

*Appeal from Moniteau Circuit Court.*

The case is stated in the opinion of the court.   It was ar-
gued and decided at the January term, 1854, but the opinion of
the court was not filed until the present term.

*E. L. Edwards*, for appellants.

*M. M. Parsons*, for respondents.

RYLAND, Judge, delivered the opinion of the court.

The plaintiffs, William North and William P. Scott, on the
29th of August, 1853, filed their petition in the Moniteau Cir-
cuit Court clerk's office, against Alexander R. Nelson and Jas.

North *v.* Nelson.

H. McClure, defendants, stating that the defendants, by their promissory note, dated 26th October, 1852, promised to pay the plaintiffs, or order, four months after date, the sum of five hundred and fifty-three dollars and ninety-two cents, for value received; on which note were credits, endorsed at different times, amounting to three hundred dollars. The plaintiffs asked judgment for the balance of principal, with interest.

On the 30th of August, the clerk issued a writ of summons against the defendants, returnable to the September term of the Circuit Court of said county. The sheriff returned the writ executed on the 5th of September, 1853, by leaving a copy of the writ and petition at the usual place of the defendant, Mc-Clure, with his wife, a white person of the family, above fifteen years of age ; and on the same day, by reading the petition and writ to the other defendant, Nelson.

On the 26th day of September, 1853, the Moniteau Circuit Court commenced its term. On Thursday, 29th September, being the fourth day of the term of said court, the defendants filed the following answer to the plaintiffs' petition :

" Nelson & McClure, defendants, *vs.* North & Scott, plaintiffs. Said defendants admit that they executed the note sued upon to the said North & Scott, the plaintiffs in said suit, and that the payments endorsed thereon are correctly endorsed, and that there is a balance due said plaintiffs, which defendants will pay as soon as they can get the money."

This answer was signed by the attorney of defendants, and sworn to by one of the defendants. On the same day, the plaintiffs, by their attorney, moved the court to strike out defendants' answer, because it does not contain any grounds of defence.

This motion was sustained by the court; the answer was stricken out, and the plaintiffs obtained judgment for want of an answer.

The defendants excepted to these rulings of the court, and bring the case here by appeal.

The only point made by the appellants is, that the defend-

ants having answered, and presented no false issue to the court, the court had no authority to strike out the answer. The appellants, by their counsel, contend that this case differs from the case of *Jeffries* v. *Sappington*, (15 Mo. Rep. 628,) and of *Neidlet* v. *Wales*, (16 Mo. Rep. 214,) because, in these cases, the defendants set up in their answers as a defence, matters which, in law, were no defence, and which this court held were properly stricken out. But, in this case, the answer presents no *false* issue, and is not, therefore, a similar case. Here, the answer, it is said, admits the debt, which is all the defendants could do, and, if it is stricken out, it is because it contains the truth. Really this is strange logic. Can it be pretended that this answer sets up a defence to the plaintiffs' petition? Who ever heard before, that it was in law a defence to the plaintiffs' action for the defendant to say in writing, " I owe you the money in your petition demanded of me, and I will pay you as soon as I get it?"

Under our new code, the only pleading on the part of the defendant is either a demurrer or an answer. (Practice Act, 1849, art. 6, sec. 2, p. 80.) "The answer of the defendant shall contain, 1st, In respect to each allegation of the petition controverted by defendant, a specific denial thereof, or of any knowledge thereof, sufficient to form a belief; 2d, A statement of any new matter constituting a defence, in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended. The defendant may set forth in his answer as many grounds of defence as he shall have. They shall be separately stated, and may refer to the causes of action which they are intended to answer, in any manner by which they may be intelligibly distinguished." (Secs. 7 and 8 of art. 6, of same act.) The defendants below, appellants here, seem to think that it is the falsity only of the matters stated in the answer that can authorize the court to strike it out, and therefore they are compelled, in their argument before the court, to assume that the answers put in by the defendants, in the cases of *Jeffries* v.

*Sappington*, and *Neidlet* v. *Wales*, presented false issues, and hence, it was not error to strike them out ; but, as the answer in this case presented the truth, it was wrong to strike it out. This court did not pretend to place its opinion in those two cases upon any doubt of the truth of the matters set forth in the answers. The matters were taken as true, and then they constituted no legal defence. Likewise here, the matters set forth in this answer may be taken as true, and still they present no defence to the action of the plaintiffs. They amount to no answer, and the Circuit Court did properly sustain the motion to strike out the answer ; its action is fully supported by the decisions of this court, in the cases of *Jeffries* v. *Sappington*, and *Neidlet* v. *Wales*.

Then what is to be the result? Here is a petition founded on a simple promise to pay money : the defendants having been legally served with process more than twenty days before the return day of the summons—one by personal service, the other by constructive—they appear and fail to make any proper or legal defence to the action ; they offer an answer which is stricken out, on motion, which amounts to no answer. Now what must the plaintiffs do ? Demand judgment by default, for want of an answer, or voluntarily continue the cause ? I say, without hesitation, demand judgment, and that the Circuit Court is bound to render judgment in such cases by every principle and rule of practice known to our law.

In examining this subject, let us go back to the territorial law of July 3d, 1807. Here we find that, on the plaintiff's filing his declaration, petition or statament in the clerk's office, " it shall be the duty of the clerk to endorse thereon an order to the sheriff, in the nature of a summons or capias, according to the nature of the demand or complaint; provided, there shall be at least fifteen days between the execution of such writ and the term to which it is made returnable. It shall be the duty of every defendant to plead to the merits on or before the third day of each term, and if any part of the pleading is adjudged bad, immaterial or insufficient, the party shall be re-

quired to plead to the merits *instanter;* and if the plaintiff shall conceive that the matter contained in the defendant's plea requires time to reply to, he may continue his cause until the next term, or proceed to trial. It shall be the duty of the court to try each cause in which an *issue* is made at the first term; provided they are of opinion the very right of the case can be attained. If the defendant fails to appear and plead, the plaintiff may cause judgment to be entered up against him at any time during the last day of the term, which judgment shall be final.

"The service of a summons shall be by reading the writ, declaration, petition or statement to the defendant, or delivering him a copy thereof, or leaving such copy at his usual place of abode, with some person of the family, above the age of fifteen years, and informing such person of the contents thereof; such service to be at least fifteen days before the return day of the writ." (Edwards' Ter. Law, p. 113, 114.)

By the third section of the act of the legislature of the territory of Louisiana, passed October 30th, 1810, it was made lawful for either party "to continue his suit the first term to which the writ is made returnable; and the second term, no continuance shall be granted to either party, unless for good cause shown." (1 vol. Edward's Ter. Laws, 244.) Thus stood the law until 1822; prior to 1810, the issues, when joined, were triable at the first term, if the court was of opinion that the very right of the case could be attained. The plaintiff could continue in order to have time to reply; but, at second term, the trial must be had, unless good cause shown for a continuance. The defendant, under this state of the law, must plead to the merits on or before the third day of the term, if the writ had been served fifteen days before the return day thereof. If no plea, or an insufficient plea be filed, and a failure to file a good one, the plaintiff could obtain his judgment by default at the first term.

"No plea in abatement shall be admitted or received, unless the party offering the same shall prove the truth thereof by oath

or affirmation, as the case may require." (Practice Act of 1807, sec. 27. 1 Ter. Laws, 115.)

Dilatory pleas were never allowed without oath. Pleas to the merits were always admitted, withcut respect to form, where they contained sufficient matter to bring the merits of the case at issue. (Same act.)

Under this state of the law, that is, from 1807 to 1822, the plaintiff had a right to his judgment by default, if the defendant had been duly served with process, and failed to file a plea putting the case at issue in some mode or other.

By the act to regulate proceedings at law, passed by the legislature of the state of Missouri in January, 1822, "every defendant duly served with process shall plead to the merits on or before the sixth day of the term to which the original writ is returnable, if the term shall so long continue; and if not, then before the end of the term." (Sec. 19.) "If the defendant shall fail to file his plea or other pleading within the time prescribed by this act or rule of court, the plaintiff may have judgment by default; and in cases of judgment by default, where the demand is liquidated and reduced to writing, the court shall render judgment for the amount due, which shall be final." (Sec. 26 of same act.) Thus stood the law up to 1825. Wherever there had been service on the defendant, and he failed to plead, judgment was given against him by default. The plea, too, must be a meritorious one. If an immaterial issue was tendered, or any plea not substantially answering the declaration was filed, it was liable to be demurred to, or regarded as a nullity; and unless a good and sufficient plea was filed by the defendant at the first term, judgment was rendered against him by default. But all cases in which available pleas had been filed, or proper issues made, were continued the first term, as a matter of course.

In 1825, the legislature passed an act called the petition and' summons law. By this act, any person holding a bond or note for the direct payment of money or property, might file his petition; a summons was to issue thereon, which, if served fif-

24—VOL. XXI.

teen days before the return day of the writ, the plaintiff had a right to judgment by default, unless the defendant filed his plea to the petition on or before the second day of the term at which the writ was made returnable. If the defendant filed his plea, then a trial was had at the first term, unless continued for cause shown. Here was the first great innovation in the proceedings to collect debts in our courts. This petition and summons act required the defendant, who had been served personally with process, fifteen days before the return day of the writ, to plead to the action within the two first days of the term, or judgment would be rendered against him by default. But even if he did plead, he was not entitled to a continuance, unless he showed cause therefor. There was to be a trial at the first term, and judgment could be rendered against him, on trial, at the first term, after fifteen days' service of the writ, and his estate sold to satisfy the same. Thus stood the law in cases of the direct promise by one person to another of the payment of property or money, evidenced by bond or note, up to 1849. The summons must be executed in these cases, personally, by delivering a copy of the petition and summons to each defendant, and when so executed fifteen days before the return day, the defendant must plead within the two first days of the term, and a trial be had at that term, unless a continuance be ordered for cause shown. If the service be otherwise than personal, the defendant must plead within the six first days of the term, and then the cause stands continued; otherwise the plaintiff will have judgment by default. These pleas must be to the merits, putting in issue, substantially, the matters involved in the controversy. (*Donaldson* v. *Anderson*, 5 Mo. Rep. 480. *Southack* v. *Morris*, 6 Mo. Rep. 351.)

There was still a common law method of collecting debts, by filing declaration, and a common law method of proceeding in other actions. Yet, in all these common law actions, wherever the defendants had been served with process fifteen days before the return day of the writ, and they failed to plead to the action, judgment was rendered against them by default.

And it was not any frivolous or immaterial plea that would answer for a continuance; there must be an issue formed properly under the rules of pleading known to the common law, and also as regulated by our various statutes, that would entitle the defendant to his continuance.

Thus the petition and summons, authorizing a trial at the first term, upon fifteen days' personal service, upon all bonds or notes for the direct payment of money or property, became the most common and frequent course of proceeding in our courts. It was the usual mode of collecting debts.

In 1839, the legislature passed an act to amend the acts regulating practice at law. By the fourth section of this act, "All actions at law, founded on bonds, bills or notes, in the circuit court, shall be tried and determined at the return term, if the defendant shall have been personally served with process twenty days before the commencement of the term, unless good cause for a continuance be shown." This court, in the case of *Southack* v. *Morris*, held that this fourth section did not interfere with or apply to the time of pleading and trial in the petition and summons act. Here, then, was another innovation. Actions founded on bonds, notes or bills, at common law, not in the mode of petition and summons, but in the old way of declaration, &c., when the defendants were served with the process personally, twenty days before the return of the writ, were to be tried at the first term; and if the defendants in such actions were served personally with process twenty days before the commencement of the term, or were served less than twenty days and more than fifteen days, and failed or refused to plead to the actions, judgments were rendered against them by default. Thus stood the law up to 1847, when the legislature declared that, "Hereafter no special plea shall be pleaded in any action brought or pending in any courts of this state." In this law there is nothing said about the time of service of the writ or process. In all cases where one or more parties are sued, if they design to make defence to the merits of the action, they shall plead the general issue, and, under the

same, all and every matter of defence, without reference to the form or nature of the plaintiff's action or declaration, may be given in evidence. Any person holding any bond, note or instrument of writing, for the payment of money or property, may institute suit on the same, in any circuit court or court of common pleas, having competent jurisdiction, without filing any petition in debt or declaration in writing on the same.

The form of the general issue, under this act was, "the said defendant comes and defends the demand of the plaintiffs." Here, defence still must be to the merits. Here, too, if the defendants, having been served with process, under the provisions of the previous acts, still neglect to plead this general issue, judgment will be rendered against them by default. Having been served with process either fifteen days or twenty days, as the case may be, if the defendants fail to plead, and that to the merits, too—for this statutory general issue is a plea to the merits—judgment will be redered against them by default. So was the law up to 1849, when the new code of practice was adopted. This code requires both the petition and answer to be sworn to, and if the answer presents no defence in law to the matters in the petition, this court has unanimously decided that it is proper and right that such answers be stricken out. When they are stricken out, and no sufficient answer be filed to the petition, whether there has been twenty days' personal service or only fifteen days' service, personal or constructive, the plaintiff is entitled to his judgment by default for want of an answer. This has been the uniform practice—the uniform construction given by our courts to the various acts of our legislature, territorial and state, from 1807 up to this time. Whenever a party, sued and served with process, fails to make a proper defence by plea, judgment has been given against such party, at the return term, as a matter of course.

A party served fifteen days before court, who fails to plead, is liable to have judgment rendered against him for want of a plea. Judgments by default have been usual during all this time, from 1809 to 1855.

North *v.* Nelson.

Let a person examine carefully all the acts on this subject, even in force in our state, and he will come to the conclusion that judgment by default is the necessary result of failing to plead properly at the return term. I mean, plead to the merits—plead so as to answer the declaration, whether the plea can be afterwards supported by the facts or not. It must contain enough to put the cause at issue; and whenever a plea is demurred to, the demurrer sustained, and no further plea tendered or filed in the case, judgment has been given at the return term. Where the plea has been stricken out or regarded as a nullity, judgment has been given at the return term, if no other or better plea is offered. If a plea is bad or frivolous, the plaintiff might either demur or treat it as a nullity, and have judgment by default at the end of the term.

Now, under our present code, is an answer which presents no defence—a mere frivolous or evasive answer—because sworn to, to be regarded as a sufficient defence for a continuance, because the defendants have not been served, personally, twenty days before the commencement of the term? Why should an answer, which is a mere nullity, now have the effect which a plea—a mere nullity before—had not? Under the present code, the merits are always supposed to be the matters to be tried; they are set forth under oath, and when the defendants have no merits to offer in defence of the action, why should that be a reason for further indulgence? Will it do to answer, because, if you do not allow this to be a cause of continuance, men will make out they have a good defence by falsehood and perjury? Surely, this is a poor answer to a court of justice. If the law requiring a man to swear to the truth of his answer will not let him make a false answer, what harm does it do him? A good man will tell the truth—a bad man will state falsehoods in his answer, showing he has a meritorious defence, when, in fact, he has none. The bad man gets a continuance, the price of his perjury; while the good man suffers judgment against him for an honest debt. Let the legislature remedy this evil, if it be one; the courts can not.

Under the new code, the plaintiff can not demur to the defendant's answer. He must move to strike it out, if the facts set forth amount to no defence. Here the facts set forth by these defendants below amount to no defence. The plaintiffs, on motion, have the answer stricken out; no further answer is offered, and the court renders judgment by default against them. The record shows the service of the writ was more than fifteen days in this case; on one defendant, personally; on the other, constructively. In the case of *Holland* v. *Hunter & White*, (15 Mo. Rep. 475,) the court unanimously held that, under the act of 1849, (the new code,) in a petition on a promissory note, for the payment of money, in which the defendant has been regularly served by leaving a copy at his usual place of abode, fifteen days before the return day of the writ, and he fails or neglects to answer, the court may render judgment against him by default. This case is conclusive upon the question here raised—an improper or frivolous answer, stricken out by the court, on motion, leaves the defendant as though he had failed and neglected to answer at first.

As to the policy of requiring the parties to swear to their petitions and answers, this court is not called upon to express an opinion. Sufficient for us if we can find out and declare what the law is, not what it ought to be.

In our view, and in our present opinion, the principles set forth herein cannot be properly charged as an innovation upon the long settled and established practice and rules of procedure in our courts. But let the doctrine that an evasive answer, that any frivolous answer, that any answer offering a mere pretence of defence, although stricken out, yet entitles the defendant to a continuance, unless there has been twenty days' personal service, and I feel assured that such will produce not only an overthrow of the long established and received opinions of the courts and the profession, but will be productive of mischievous innovation.

Judge Gamble concurring, the judgment below will be affirmed; Judge Scott dissenting.

SCOTT, Judge, dissenting. This record presents the question whether, under the present practice act, there should be a judgment in every case at the return term of the writ, in which there has been fifteen days' service of process, in the event the answer shall be judged bad on demurrer, or is stricken out, on motion.

The sixth section of the fifth article of the practice act of 1849, directs that, " in all cases where the petition is founded solely upon a bond, bill or promissory note, for the direct payment of money, the plaintiff may have a trial at the return term ; provided the defendant has been served with process, by delivering him a copy of the petition and writ twenty days before the return day."

The second section of the sixth article of the same act requires the demurrer or answer to the petition " to be filed within six days after the return day of the summons, if the term so long continues ;" and it also requires that, in the cases above mentioned, " when process has been served twenty days' before the return day, there shall be a trial at the first term, unless, for good cause, a continuance is granted ; and in these cases, the demurrer or answer must be filed within the first two days of the return term." So the statute is silent as to the time at which trials in ordinary cases shall be had. By requiring them, however, in particular cases to take place at the first term, an implication arises that, in other cases, such would not be the rule. Matters not provided for in the act of 1849, remain as they were before its enactment.

Under the former practice act, trials could be had at the first term in the cases in which they can be had at the first term, under the present act. In all other cases, they were required to take place at the second term. In all but the excepted cases, the defendant, by filing a plea and thereby signifying his desire that the trial should be postponed, obtained a continuance, as a matter of course. This practice was established, and, we may presume, influenced business men in making their engagements.

The difficulty arises from the fact that, under the present law, all answers to a petition must be under oath. Under the former system, any plea, if available in its terms, unsupported by an oath, would entitle a party to a continuance. This entered into and formed a part of the plan for the collection of demands, and was designed to give the defendant time, if he desired it. Now, as the truth of an answer must be sworn to, there are ma y who want a continuance that will not swear to the truth of a strictly legal answer, yet will put in an evasive one, consiste it w h truth, as was done in the present case. If this answer is made way with, and judgment by default is taken at the return term, the effect will be to overturn the system long established for the collection of demands, and make them all, liquidated and unliquidated, collectable without regard to the time of the service of the process ; provided it has been fifteen days before the return term, in a period, at the longest, a little more than six months ; and, in cases where the debtor has no real estate, in thirty or forty days.

This question involves higher considerations than the mere forms of pleading. The system for the collection of debts, established in any state, is a matter of considerable importance, both to the debtor and the creditor ; and when it has been fixed and known, so that it may have entered into the calculations of business men, on making their engagements, should not be disturbed for trivial causes. It is of too much importance to be overturned by rules of practice or pleadings, when, so far from there being any thing in the law, which shows that any such measure was contemplated by the legislature, the implication is the other way. The most upright men, in contracting debts, look to the laws enforcing their collection, and act accordingly. They base their calculations on such grounds as would be a justification to any honest and prudent man. Knowing that casualties and misfortunes may defeat the most just expectations, they will take care that, should they be disappointed, and the worst should come, that they will be enabled to meet their liabilities, when enforced by the law. On the

North *v.* Nelson.

one hand, while there should be no unnecessary delay interposed in the collection of debts, on the other, sound policy requires that it should not be in the power of the creditor to sacrifice his debtor, without affording him a reasonable time to meet engagements, whose violations may have been superinduced by misfortune. It would tend to the sacrifice of estates, and the ruin of families, if the law did not interpose a little delay to the claims of a creditor on an honest debtor overtaken by casualties beyond his control. This disturbance of the system of collection will, sooner or later, lead to a reaction, which all experince has shown will militate against the creditor. It is for the interest of creditors that the present system should remain as it is, for it can not be changed but to their ultimate detriment. If a system of collection, just to the creditor, and satisfactory to the debtor, be long established and becomes well known, it will so intertwine itself with the transactions of men, that, in times of pecuniary distress and embarrassment, there will be less likelihood of its being altered to the injury of the creditor.

These observations have been made, because the considerations suggested in them have been wholly overlooked in the argument of the case, and it was made to turn on rules of pleading and practice, regardless of the consequences its determination may have on the system established for the collection of debts. The assertion may be hazarded, that, had the legislature foreseen that the result contended for by the plaintiff would have been produced by the act, it would never have become a law.

A serious objection to such a construction of the law as will make all cases triable at the first term, unless there is a valid answer, supported by the oath of the party, is the temptation to false swearing which will thereby be held out to suitors. It is unwise to tempt an oppressed debtor to swear to a plea, in order that he may obtain delay. There is no policy in multiplying the temptations to falsehood in courts of justice. Law should

not be so expounded as to oppress the honest and conscientious, while relief is given to the less scrupulous.

In my opinion, the judgment below ought to be reversed.